```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KRISTEN SCHUYLER,

                Plaintiff,

v.

SUN LIFE ASSURANCE COMPANY OF
CANADA,

                Defendant.

No. 20-cv-10905 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Kristen Schuyler brings this action against Defendant Sun Life Assurance Company of Canada ("Sun Life") for long-term disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"). Pending before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, Sun Life's motion is granted and Schuyler's motion is denied.

## BACKGROUND

    The following facts are undisputed unless otherwise noted. Beginning in May 2011, Schuyler was employed at Benco Dental Supply Company ("Benco Dental") as a Territory Sales Representative. Pl. 56.1 Statement ¶ 21. During the relevant time frame, Benco Dental provided full-time employees with Long Term Disability ("LTD") insurance coverage under the Benco Dental Supply Company Long Term Disability Plan (the "LTD Plan"). Id. ¶ 5. The LTD Plan is an "employee welfare benefit plan" within the definition of ERISA, 29 U.S.C. § 1002(1). Id. ¶ 7. To determine eligibility for LTD benefits, the LTD Plan defined "Totally Disabled" as someone who was "unable to perform one or more of the Material and Substantial Duties of [their] Regular

Occupation" for the defined period of time. *Id.* ¶ 14. Sun Life was the insurer, claim fiduciary, and claims administrator of the LTD Plan. *Id.* ¶¶ 6, 8-9.

On September 16, 2015, when Schuyler was on a trip in Nashville, Tennessee, she fell down a flight of stairs and sustained traumatic brain injuries. *Id.* ¶¶ 25, 33. She was admitted to the hospital and discharged three days later. *Id.* ¶¶ 27, 34. Over the next four years, Schuyler sought treatment from multiple doctors and underwent speech therapy, physical therapy, hyperbaric oxygen therapy, and other cognitive therapies in an effort to improve her symptoms. *Id.* ¶¶ 37-99. Schuyler claims that as of May 23, 2019, she was still suffering from "confusion, difficulty with concentration, memory problems, mental and physical fatigue, sleep problems, sensitivity to noise, and sensitivity to light." *Id.* ¶ 99. Between September 2015 and May 2019, Schuyler nonetheless continued to work as a Territory Sales Representative at Benco Dental. Def. 56.1 Statement ¶¶ 12-18. She last worked at Benco Dental on May 22, 2019, the date she claims marked the "beginning of her disability." *Id.*; *see also* Pl. 56.1 Statement ¶ 159. According to Schuyler, she went on a six-month medical leave "[s]tarting the next day . . . at the direction of my doctors." Schuyler Aff. ¶ 78. Her "employment relationship with Benco ended at the end of her six-month medical leave period."[1] Pl. Response to Def. 56.1 Statement ¶ 18.

On May 31, 2019, Schuyler submitted a claim for LTD benefits. Sun Life denied the claim on October 17, 2019, stating, in part, that the "information [Sun Life] received was not sufficient to demonstrate that Schuyler is totally disabled, as defined in the group policy." *Id.* ¶ 163. On

---

[1] During the course of negotiations between Schuyler and Benco Dental in December 2019, Benco Dental noted: "The reason for your termination is that your leave of absence expired and you did not provide Benco with any affirmative medical evidence that you were (or were not) able to return to work and perform the essential functions of your job with or without reasonable accommodation despite Benco's multiple written requests for the same." ECF No. 39, Ex. 54 at 3.

January 14, 2020, Schuyler appealed the denial through an attorney. Sun Life denied the appeal on August 31, 2020. *Id.* ¶¶ 166, 170.

On December 12, 2019—between the denial of her LTD benefits and her appeal—Schuyler entered into a Separation Agreement and Release with Benco Dental (the "Agreement"). Def. 56.1 Statement ¶ 67; *see* ECF No. 48, Ex. A ("SA"). The Agreement states the following: "Employee of her/his own free will, voluntarily releases . . . any and all known and unknown actions . . . arising out of or in any way connected with Employee's employment with Benco . . . including, but not limited to, any alleged violation of . . . the Employee Retirement Income Security Act of 1974 ('ERISA')." SA ¶ 9.

On December 24, 2020, Schuyler filed this action under ERISA challenging the denial of her LTD benefits. The parties now cross-move for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (internal quotation marks omitted). In determining whether there is a genuine issue of material fact, the Court must view all facts "in the light most favorable to the non-moving party." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001).

## DISCUSSION

Sun Life argues that Schuyler waived any legal claims she may have had under ERISA through the Separation Agreement she signed with Benco Dental. The Court agrees.

An individual may contractually waive legal claims under ERISA as long as the waiver was "knowing and voluntary." *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1367 (2d Cir. 1991); *see also Finz v. Schlesinger*, 957 F.2d 78, 82 (2d Cir. 1992); *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 231 (2d Cir. 1995). "The validity of an individual's waiver of [ERISA] benefits is subject to closer scrutiny than his or her waiver of general contract claims," and the Second Circuit has "required close inspection of the totality of circumstances surrounding a waiver of ERISA benefits." *Finz*, 957 F.2d at 81. Accordingly, in *Laniok*, the Second Circuit identified six factors that a court should consider when determining if a plaintiff waived her ERISA claims knowingly and voluntarily:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of [the] plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so[,] and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Laniok*, 935 F.2d at 1368 (quoting *Bormann v. AT&T Commc'ns, Inc.*, 875 F.2d 399, 403 (2d Cir. 1989) (applying the same six factors to waiver of an Age Discrimination in Employment Act claim)). This list is "not exhaustive," and "the absence of a single factor is not necessarily dispositive." *Id.* (quoting *Bormann*, 875 F.2d at 403 & n.1).[2]

---

[2] The Court notes that these Second Circuit cases address the waiver of pension benefits, not disability benefits, under ERISA. The Court, however, sees no reason to treat pension benefits and disability benefits differently for the purposes of waiver. In *Laniok*, the Second Circuit reasoned that pension benefits can be waived because there is "no provision" in the ERISA statute "generally prohibiting an individual from waiving his right to participate in a pension plan." 935 F.2d at 1364. The Circuit further reasoned that allowing an individual to waive pension benefits is consistent with the purpose of ERISA, because "Congress intended to protect contractually defined benefits, and to ensure that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it." *Id.* at 1365 (internal citation and quotation marks omitted). The same reasoning applies equally to disability benefits under ERISA. Indeed, courts both within and outside of this Circuit have previously concluded that disability benefits may also be waived. *See, e.g.*, *He v. Cigna Life Ins. Co. of N.Y. & Cornell Univ.*, 2017 WL 4350570, at *3 (S.D.N.Y. July 7, 2017) (finding that the plaintiff knowingly and voluntarily waived her claim for disability benefits

4

Here, the factors weigh decidedly in Sun Life's favor. With respect to the first factor, Schuyler is a well-educated individual with extensive business experience. She holds a bachelor's degree in Business Administration and Marketing from Kent State University, and an MBA from Cleveland State University. Pl. 56.1 Statement ¶¶ 241-42. She was employed as a Territory Sales Representative at Benco Dental for around eight years. In that role, she "managed all Benco Dental sales for a territory of over 250 dentists," *id.* ¶ 244, and her role also involved work with "contracts," Schuyler Aff. ¶ 7.[3] In addition, Schuyler worked as a real estate agent from at least 2016 to 2020. Pl. Response to Def. 56.1 Statement ¶ 15.

As for the second factor, the Agreement plainly states that "Employee has been afforded a reasonable opportunity to consider this Agreement," SA at 1, and further provides that "Employee . . . has been provided adequate time to consider this Agreement, (in excess of 14 days)," SA ¶ 11.

---

under ERISA); *Linder v. BYK-Chemie USA, Inc.*, 2006 WL 648206, at *6 (D. Conn. Mar. 10, 2006) ("There is no provision in ERISA generally prohibiting an individual from waiving his right to participate in an ERISA benefits plan[.]"); *see also Mead v. Intermec Techs. Corp.*, 271 F.3d 715, 717 (8th Cir. 2001) ("[W]e note that releases of legal claims in exchange for severance benefits are enforceable under ERISA. . . . We agree with the District Court that the severance agreement and waiver are sufficient to dispose of Mead's claim for short-term disability benefits even if he otherwise were eligible for them."); *Keister v. AARP Benefits Comm.*, 410 F. Supp. 3d 244, 250 (D.D.C. 2019), *aff'd*, 839 F. App'x 559 (D.C. Cir. 2021) ("[T]he Court concludes that the plain language of the Release that Keister voluntarily signed bars Keister from bringing his claim for long-term disability benefits against Defendants.").

[3] Sun Life moves to strike Schuyler's affidavit submitted in support of her motion for summary judgment, on the basis that it improperly attempts to expand the administrative record. Sun Life has clarified, however, that "the portion of Plaintiff's affidavit addressing the Severance Agreement with Benco Dental should be considered . . . because the argument that the lawsuit is barred by the terms of the Agreement is unrelated to the merits of the disability claim." Def. Mot. to Strike Reply Br. 1 n.1. Schuyler cross-moves to strike Sun Life's extra-record evidence in the event her affidavit is stricken. The Court denies both motions to strike, as it need only consider Schuyler's affidavit for the limited purpose of determining whether she knowingly and voluntarily released her ERISA claims. *See Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003) (observing that "[t]he decision whether to consider evidence from outside the administrative record is within the discretion of the district court," as long as there is "good cause" to do so); *He*, 2017 WL 4350570, at *2 n.1 (citing *Muller*) ("In ERISA bench trials, it is within the court's discretion to consider materials outside the administrative record upon a showing of good cause. Because the Release presents a threshold issue that is ultimately dispositive of Dr. He's claim, the Court finds there is good cause to consider it and the related materials offered by Cigna.").

Schuyler had possession of the Agreement for twenty days before signing it, which she does not contend was an insufficient amount of time.  *See* Schuyler Aff. ¶ 83; Def. 56.1 Statement ¶ 67. The Agreement also provides that "Employee may revoke this agreement for a period of 7 days after it has been executed," which further extended the amount of time Schuyler had to consider its terms.  SA ¶ 11; *see Linder v. BYK-Chemie USA, Inc.*, 2006 WL 648206, at *8 (D. Conn. Mar. 10, 2006) (noting that the plaintiff had "seven days after executing the release to revoke his election"); *De Pace v. Matsushita Elec. Corp. of Am.*, 257 F. Supp. 2d 543, 556 (E.D.N.Y. 2003) (same).

With respect to the third factor, Schuyler personally negotiated an increase in the Agreement's compensation from $19,584.06 to $25,000.00.  *See* Schuyler Aff. ¶ 84 ("I asked for an increased amount in exchange for releasing claims against Benco."); *id.* ¶¶ 83, 86.  She also negotiated other terms of the agreement, including an extension of her health insurance coverage and mutual non-disparagement language.  ECF No. 39, Ex. 54; *see Frommert v. Conright*, 535 F.3d 111, 122-23 (2d Cir. 2008) (reversing the district court's decision not to enforce the ERISA release in part because "[s]ome Plaintiffs-Appellees even modified the terms of the release forms with which they had been presented before signing them"), *rev'd & remanded on other grounds*, 559 U.S. 506 (2010); *He v. Cigna Life Ins. Co. of N.Y. & Cornell Univ.*, 2017 WL 4350570, at *3 (S.D.N.Y. July 7, 2017) ("Dr. He personally negotiated the release, convincing Cornell to double its original offer.").

The fourth and fifth factors weigh even more heavily in favor of Sun Life's position.  The Agreement expressly states, in two separate places, that it releases any claims under ERISA.  Under the section titled "Releases," the Agreement reads: "Employee of her/his own free will, voluntarily releases . . . any and all known and unknown actions, causes of actions, suits . . . arising out of or

6

in any way connected with Employee's employment with Benco . . . including, but not limited to, any alleged violation of . . . the Employee Retirement Income Security Act of 1974 ('ERISA').' SA ¶ 9. At the end of the contract, right above the parties' signatures, the Agreement again states:

> By signing this Agreement, Employee represents and agrees:
>
> (a) That she has read and fully understands this Agreement and agrees to be legally bound thereby;
> (b) That she had the opportunity to consult with an attorney of her choosing before signing this Agreement;
> (c) That she is entering into this Agreement voluntarily; and
> (d) That she understands she is waiving any potential claim(s) she may have under Title VII, ADA, EPA, ERISA, WARN, FLSA, PMWA, PHRA, PHPCL, WPCL, OWBPA, and the FMLA consistent with the language of this agreement.

*Id.* ¶ 21. Courts have previously enforced a release of ERISA claims even where the severance agreement did not name the ERISA statute explicitly. *See, e.g.*, *He,* 2017 WL 4350570, at *3 (enforcing the release where "Dr. He released an expansive class of releases from 'any and all suits or claims of any nature whatsoever arising out of or in connection with her employment . . . . Although a specific waiver of ERISA claims would have been clearer, such claims are also validly waived by a more general release of the sort signed by Dr. He" (alterations omitted)); *Linder*, 2006 WL 648206, at *8 (enforcing the release where "the terms of the Release are clear and provide that plaintiff waives 'any and all claims, causes of action and charges, of whatever kind or nature, whether known or unknown, which he now or hereafter may have against any member of the Company Group, including, but not limited to, claims arising under or in any way connected with his employment with the Company").

With respect to the fifth factor, Schuyler asserts that although "I did not have an employment attorney review the agreement . . . I had my disability attorney, Brennan Maki, review the agreement to make sure it did not harm my LTD and SSD claims." Schuyler Aff. ¶¶ 84-85. The Agreement also provides: "Employee acknowledges and agrees that . . . she has been advised

7

by Benco to consult with an attorney before signing this Agreement, and that she has been given the opportunity to discuss this matter with an attorney." SA ¶ 11. Thus, even if it were not clear to a lay person whether the Agreement released claims for disability benefits, the fact that Schuyler consulted her disability attorney before signing the agreement leaves no doubt that the waiver was knowing and voluntary. *See Frommert*, 535 F.3d at 122 (reversing the district court's finding that the ERISA release was unenforceable in part because the defendant "encouraged [the plaintiffs] to consult an attorney"); *Finz*, 957 F.2d at 82 (affirming the district court's decision to enforce the ERISA release and observing that "there was no indication that [the plaintiff] was denied the opportunity to consult with an attorney about his rights under ERISA"); *De Pace*, 257 F. Supp. 2d at 556 ("[The plaintiff's] Agreement encouraged employees to seek legal counsel . . . ."); *Yablon v. Stroock & Stroock & Lavan Ret. Plan & Tr.*, 2002 WL 1300256, at *6 (S.D.N.Y. June 11, 2002) ("[The plaintiff] was explicitly encouraged to consult an attorney."), *aff'd*, 93 F. App'x 329 (2d Cir. 2004).

As for the sixth factor—"whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law"— Schuyler received $25,000 in compensation from the Agreement, although she asserts in her briefing, without any support, that her present claim is worth approximately $1.2 million. *See* Pl. Reply Br. 24. At least one court, however, has declined to consider the value of the ERISA claim presently being litigated when weighing the sixth factor. *See He*, 2017 WL 4350570, at *3 ("The parties have identified no other benefits to which Dr. He was already entitled by contract or law, so as to offset the consideration given in exchange for the waiver."). In *He*, like in the instant case, the plaintiff signed the severance agreement with her employer after the initial denial of her disability benefits and before the adjudication of her appeal. *Id.* at *1-2. The *He* court reasonably

did not consider the plaintiff to be "already entitled" to those denied benefits at the time she signed the severance agreement, even though she still had the option to appeal the decision. *Id.* at *3. Regardless, even if the Court were to consider the *potential* benefits that Schuyler would be entitled to if she were to prevail in this litigation, that factor alone does not overcome the clarity of the Agreement with respect to the release of ERISA claims, or the fact that Schuyler consulted her disability attorney before signing the Agreement. *See Laniok*, 935 F.2d at 1368 ("[T]he absence of a single factor is not necessarily dispositive.").

     Schuyler makes three further arguments against enforcing the release, none of which are ultimately persuasive. First, Schuyler points to an email she sent to Mary Walsh Dempsey, an attorney representing Benco Dental, before she signed the Agreement. In that email—which included numerous points of clarification and demands regarding other parts of the Agreement—Schuyler sought confirmation that "this Agreement will not affect my ability to appeal the SunLife LTD claim, nor file SSDI." ECF No. 39, Ex. 54. Dempsey responded: "I am sure your lawyer told you this as part of his/her advice to you, but this agreement should have absolutely no effect on your ability to appeal your LTD or to file SSDI." *Id.* Schuyler did indeed appeal Sun Life's denial of her LTD benefits, and she also applied for Social Security Disability Insurance. *See* ECF No. 64. An administrative appeal, however, is distinct from an action in federal court, and the Agreement expressly waived "any and all known and unknown actions, causes of action, [and] suits, . . . including, but not limited to, any alleged violation of . . . the Employee Retirement Income Security Act of 1974 ("ERISA")." SA ¶ 9.[4] Again, while a lay person might not be expected to know the difference between an administrative appeal and a cause of action, Schuyler

---

[4] In another section titled "Waiver of Right to File Claims," the Agreement also stated: "Employee affirms that she/he has not filed and irrevocably waives her right to file any charge, complaint, or action in any federal, state, or local agency, court, or other tribunal . . . regarding any matter arising out of or in any way connected with Employee's employment with Benco." SA ¶ 10.

admits that she consulted her disability attorney before signing the Agreement. Schuyler Aff. ¶ 85. Thus, the Court cannot conclude that the release is unenforceable, based solely on the fact that Schuyler asked about her ability to *appeal* Sun Life's decision and received accurate information in response.

Second, Schuyler asserts, in her affidavit submitted with her summary judgment briefing, that she "only signed the Agreement because [Benco Dental's] answers assured me the agreement would not limit my ability to receive long term disability benefits from Sun Life," and that, "[i]f the agreement were to limit my ability to receive disability benefits, I would not have signed it." Schuyler Aff. ¶¶ 92, 96. But Schuyler's self-serving statements made after the fact cannot overcome the *Laniok* factors that weigh decidedly in favor of finding a knowing and voluntary waiver. *See Linder*, 2006 WL 648206, at *9 ("Plaintiff argues that he did not intend to release [his ERISA] claims . . . However, in light of the [*Laniok* factors], plaintiff's release was made knowingly and voluntarily."); *see also Zurich Am. Life Ins. Co. v. Nagel*, 590 F. Supp. 3d 702, 714 n.13 (S.D.N.Y. 2022) ("[S]elf-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment.").

Finally, Schuyler argues that, even if her waiver were knowing and voluntary, Sun Life is not a released entity under the Agreement. Per its terms, the Agreement is effective between Schuyler and "BENCO DENTAL COMPANY, for itself, its officers, directors, trustees, shareholders, partners, parents, subsidiaries, and any related or affiliated entities . . . and parties-in-interest." SA at 1. Numerous courts have concluded that plan administrators fall within the definition of an "affiliated" or "related" entity, because they act as a representative or agent of the employer's benefits plan. *See He*, 2017 WL 4350570, at *2 (collecting cases). Furthermore, a "party-in-interest" is defined in the ERISA statute as "any fiduciary (including, but not limited to,

any administrator, officer, trustee or custodian) . . . of such employee benefit plan." 29 U.S.C. § 1002(14)(A). The parties do not dispute that Sun Life was a fiduciary, as defined by ERISA, of the LTD Plan. *See* Pl. 56.1 Statement ¶ 9. Therefore, Sun Life qualifies as a released entity under the Agreement.

The Court thus concludes that Schuyler released her right to assert legal claims under ERISA in exchange for a negotiated payment at the end of her employment with Benco Dental, thereby barring this action.

## CONCLUSION

For the foregoing reasons, Sun Life's motion for summary judgment is granted and Schuyler's motion for summary judgment is denied. The Clerk of Court is respectfully directed to terminate the motion pending at docket numbers 36, 40, 51, and 54 and close this case.

Dated:   March 7, 2023
         New York, New York

Ronnie Abrams
United States District Judge