UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KRISTEN SCHUYLER,

Plaintiff,

v.

SUN LIFE ASSURANCE COMPANY OF CANADA,

Defendant.

20-CV-10905 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Kristen Schuyler brings this action against Defendant Sun Life Assurance Company of Canada ("Sun Life") for long-term disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"). Pending before the Court are the parties' cross-motions for summary judgment, made pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, both motions are denied, and the claim is remanded to Sun Life as plan administrator for renewed consideration of Schuyler's disability benefits application.

## BACKGROUND

The following facts are undisputed unless otherwise noted and are taken from the parties' statements and counterstatements of fact filed pursuant to Local Civil Rule 56.1, the Administrative Record before Sun Life on appeal, and new evidence not available to Sun Life during its review of Schuyler's benefits application.[1]

[1] Defendant's administrative record of Plaintiff's claim (Dkt. Nos. 89-1–89-17) is referred to as the "AR."

**I. Schuyler's Work at Benco and Her Injury**

Beginning in May 2011, Plaintiff Kristen Schuyler worked as a Territory Sales Representative for Benco Dental ("Benco"), a company that sells equipment to dental practices. Pl. 56.1 Statement ¶¶ 21–22. Schuyler was responsible for Benco's customer relationships in Southwest Florida. *Id.* ¶ 243. By all accounts, she was a high-performing employee during her first four years at Benco. *See, e.g.*, AR2450–51. Her job was to maintain relationships with Benco customers, and to identify and build relationships with potential new buyers of Benco products. Pl. 56.1 Statement ¶¶ 244, 246. She traveled via car and plane to dentists' offices for meetings, attended dental conventions—in the Southeast United States and elsewhere—and worked on the administrative aspects of Benco sales, including managing order submissions and contracts. *See id.* ¶¶ 245–46; AR0186. She typically drove about 1,000 miles per week for work and often worked weekends. AR0186.

In September 2015, Schuyler joined friends for a weekend trip to Nashville. Pl. 56.1 Statement ¶ 25; *see* AR0277. On September 16, 2015, she suffered an accident that both parties agree caused her significant injuries. *Id.* After a night out with friends, Schuyler fell down the stairs of her Airbnb and hit her head. *Id*. The next morning, she was drowsy, mildly confused, and nauseated; later that day, after her friends realized she was not acting normally, they called EMS. *Id.* ¶¶ 26–27. She was taken to Vanderbilt University Medical Center via ambulance, where she was diagnosed with a traumatic brain injury. *See id.* ¶¶ 27–28; AR0250. On September 20, after several days in the hospital, Schuyler was discharged, and her family drove her home to Florida. Pl. 56.1 Statement ¶¶ 34–35. Just two days later, however, she was admitted to Tampa General Hospital, where she remained for a week. *Id.* ¶¶ 37, 40. Doctors diagnosed her with "right temporoparietal [intraparenchymal hemorrhage], traumatic subarachnoid hemorrhage, epidural hematoma, left temporal bone fracture, moderate traumatic brain injury, right thumb ligament tear,

and an acute headache with nausea and vomiting." *Id.* ¶ 40; *see* AR0347. In layman's terms, she suffered bleeding in three parts of her brain, a traumatic brain injury, and a broken skull bone near her temple.

Schuyler continued to struggle with her injury in the years after being discharged. For example, over a year into her recovery, a medical provider noted that she still had difficulty with reading comprehension and retention. Pl. 56.1 Statement ¶ 53; AR0491. She underwent balance and vestibular therapy, speech therapy, and physical therapy for some time after her injury. *See* Pl. 56.1 Statement ¶¶ 43–46. Schuyler also traveled to Texas for 12 days in January 2018 to undergo "gyro-stimulation, sensory motor therapy, visual & ocular rehab, craniosacral therapy, balance rehab, vagal nerve stimulation, and neuro cognitive therapy," *id.* ¶ 77; *see* AR0044, and continued to visit numerous specialists for her head pain, fatigue, memory issues, vision issues, and other cognitive symptoms into 2019, *see generally* Pl. 56.1 Statement. ¶¶ 41–118. Indeed, her symptoms grew worse over time. Sun Life's own expert reviewer, Dr. Michelle Boudreau, found that Schuyler had a "worsening in recall" from July 2018 to May 2019, and neuroimaging confirmed a permanent structural injury to her brain. *Id.* ¶¶ 93, 117, 202; AR0048, AR2110, AR0528–29.

The parties dispute the impact of Schuyler's injury on her ability to perform her job. *See* Dkt. No. 92 (Def. CSOF) ¶¶ 17–30; Dkt. No. 95 (Pl. CSOF) ¶¶ 17–30. Despite her documented medical treatment and diagnoses, Schuyler continued to perform as a Benco Territory Sales Representative until May 2019. In fact, her earnings improved considerably during this period, and she received favorable reviews. Def. CSOF ¶¶ 17–20; AR0537, AR2395. Schuyler suggests that these increased earnings were not a result of her labor and instead came from the transfer of clients to her from a terminated Benco Territory Sales Representative, and from relationships she

built before her injury. Dkt. No. 47 (Schuyler Aff.) ¶ 53. She also contends that her symptoms worsened from 2015 to 2019, when she claimed disability. Dkt. No. 87 (Pl.'s Br.) at 7; Dkt. No. 94 (Pl.'s Reply Br.) at 2–7.

## II. Schuyler's Disability Insurance and Claim Process

During Schuyler's employment, Benco provided full-time employees with Long Term Disability ("LTD") insurance coverage under the Benco Dental Supply Company Long Term Disability Plan (the "LTD Plan"). Def. CSOF ¶ 5. The LTD Plan is an "employee welfare benefit plan" within the meaning of ERISA. 29 U.S.C. § 1002(1).

The LTD Plan pays out benefits following a ninety-day "Elimination Period"—i.e., the first ninety days following the claimed onset of a claimant's disability. Pl. 56.1 Statement ¶¶ 6, 12–13. The Plan defines "Total Disability" in two successive phases. During the Elimination Period "and over the next 24 months," an insured is "Totally Disabled" when "unable to perform one or more of the Material and Substantial Duties of [his or her] Regular Occupation," which the parties refer to as "Regular Occupation" disability. *Id.* ¶ 14. "Regular Occupation," in turn, means "the occupation [the claimant is] performing immediately prior to the first date [her] Period of Disability commences," and refers to that "occupation as it is typically performed in the national economy rather than the duties required by a specific employer or at a specific location." *Id.* ¶ 16. To receive more than twenty-four months of benefits, the LTD Plan requires a claimant to make a greater showing of disability. Specifically, a claimant must show an inability to "perform with reasonable continuity any Gainful Occupation for which [the claimant is] or could become reasonably qualified for by education, training and experience," which the parties refer to as "Any Occupation" disability. *Id.* ¶ 14. The Plan adds that "Total Disability must be caused by an Accident or Sickness and must commence while [the claimant is] insured under the Policy," as well as that the claimant "must be Totally Disabled during [her] Elimination Period." *Id.* Finally,

the LTD Plan grants Sun Life the "discretionary authority to make all final determinations regarding claims for benefits under the Policy," including "the right to determine eligibility for benefits and the amount of any benefits due, and to construe the terms of the Policy." AR2335; *see* Pl. 56.1 Statement ¶ 3; Def. CSOF ¶ 3. Any decision made in the exercise of that authority "is conclusive and binding [on] all parties" unless the claimant can prove it "was arbitrary and capricious." *Id.*

Schuyler last worked at Benco on May 22, 2019. Pl. 56.1 Statement ¶ 159. Earlier that month, on May 17, 2019, she had requested leave under the Family and Medical Leave Act ("FMLA"), which Benco approved for a twelve-week period ending August 24, 2019, and then extended for a second twelve-week period as a discretionary leave of absence ending November 24, 2019. Def. CSOF ¶ 160; AR1859–65, AR1912–13.

On May 31, 2019—while on FMLA leave—Schuyler submitted her LTD claim, with a disability onset date of May 23, 2019. Pl. 56.1 Statement ¶ 160; AR0012–15. Sun Life received the claim on June 3, 2019. Pl. 56.1 Statement ¶ 161; AR0436. As part of its initial review of Schuyler's claim, Sun Life obtained a vocational assessment from Timothy Andenmatten, along with opinions and information from other expert reviewers. On October 17, 2019, Sun Life issued an initial denial of Schuyler's claim. Pl. 56.1 Statement ¶¶ 162, 174–86, 230. On January 14, 2020, Schuyler appealed that denial through the LTD Plan's internal administrative process—the mandatory review that ERISA requires a plan to afford a claimant before she may seek relief in court. *Id.* ¶ 166; *see* 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503-1(h). Sun Life gathered additional records and obtained three new reviews—a medical file review by Dr. Boudreau, a nurse consultant report by Bethany Drabik addressing possible lighting accommodations, and a second vocational assessment by Julie Finnegan. Pl. 56.1 Statement ¶¶ 174, 235–240. On August 31,

2020, Sun Life denied the appeal, concluding that Schuyler had not shown she was "Totally Disabled" throughout the ninety-day Elimination Period and thereafter. *Id.* ¶¶ 170–73, 187–239. Because Sun Life determined that Schuyler did not show she was unable to perform her "Regular Occupation," it did not reach the question of whether she met the heightened requirements for "Any Occupation" disability.

While Schuyler's ERISA claim was pending, she also applied for Social Security Disability benefits. *Id.* ¶ 252. The Social Security Administration ("SSA") approved her claim on August 23, 2022. Dkt. No. 64-1 (Social Security Disability Award). In reaching its determination, the SSA relied on two examinations conducted in 2022: (1) a mental status evaluation by Jeffrey S. Cohen, Ph.D., who diagnosed Schuyler with "mild neurocognitive disorder" due to her traumatic brain injury, along with chronic migraines and light sensitivity; and (2) an internal medicine examination by Adrian Klufas, M.D., who found significant neurocognitive deficits with "auditory and visual hypersensitivity" as a result of Schuyler's 2015 fall. Pl. 56.1 Statement ¶¶ 254–58; *see generally* Dkt. No. 67. Because the SSA's determination postdated Sun Life's denial of Schuyler's appeal, it was not part of the administrative record Sun Life relied on in denying her claims.

Schuyler brought this action against Sun Life on December 24, 2020, challenging its denial of her appeal. Dkt. No. 1 (Compl.). Schuyler seeks, *inter alia*, an award of LTD benefits for the twenty-four months in which she claims she could not perform her "Regular Occupation," and remand to Sun Life to determine whether she is entitled to further benefits because of her claim that she suffers from a "Total Disability" that prevents her from fulfilling "Any Occupation." In 2023, after the parties first cross-moved for summary judgment, the Court issued an Opinion and Order granting Sun Life's motion and denying Schuyler's motion, concluding that Schuyler had waived any right to appeal against Sun Life as part of a separation agreement she entered into with

Benco upon her termination. Dkt. No. 69 (Mar. 7, 2023 Op. & Order). The Second Circuit subsequently reversed that ruling, holding that Schuyler had not knowingly and voluntarily released her ERISA claims. *Schuyler v. Sun Life Assurance Co. of Canada*, 150 F.4th 57, 59 (2d Cir. 2025). Upon remand, the parties filed renewed cross-motions for summary judgment. The Court held oral argument on the parties' motions on June 16, 2026.

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[2] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009). In determining whether there is a genuine issue of material fact, the Court must view all facts "in the light most favorable to the non-moving party." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001). On cross-motions for summary judgment, the "court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *A & E Television Networks v. Pivot Point Entertainment, LLC,* 2013 WL 1245453, at *7 (S.D.N.Y. Mar. 27, 2013) (citing *Schwabenbauer v. Bd. of Educ. of City Sch. Dist. of City of Olean*, 667 F.2d 305, 314 (2d Cir. 1981)).

"In ERISA cases, the standard for summary judgment must also be viewed in conjunction with the standard of review of administrative actions under the ERISA guidelines." *Diagnostic Med. Assocs., M.D., P.C. v. Guardian Life Ins. Co. of Am.,* 157 F. Supp. 2d 292, 297 (S.D.N.Y.

[2] All quotations omit internal quotation marks, alterations, and citations unless otherwise noted.

2001). The default standard of review in ERISA appeals is *de novo*. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). "[W]hen an employee benefit plan grants a plan fiduciary discretionary authority to construe the terms of the plan, the court may reverse only if the fiduciary's decision was arbitrary and capricious." *Rombach v. Nestle USA, Inc.*, 211 F.3d 190, 194 (2d Cir. 2000). But even where the fiduciary has such authority, "a plan's failure to comply with the Department of Labor's claims-procedure regulation" in denying a claim for benefits "will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless." *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 57–58 (2d Cir. 2016) (emphasis in original). "Moreover, the plan bears the burden of proof on this issue since the party claiming deferential review should prove the predicate that justifies it." *Id.*

## DISCUSSION

The parties' cross-motions present two issues: first, what standard of review applies to Sun Life's final benefits determination; and second, whether Schuyler is entitled to long-term disability benefits under the LTD Plan.

Sun Life argues that it did not commit any errors in its consideration of Schuyler's claim, and to the extent it did, they were harmless. Therefore, Sun Life contends, the arbitrary and capricious standard of review applies. Schuyler disputes this, highlighting what she insists is a key error in the claim review process that vitiates deferential review, and thus asks the Court to review her benefits application *de novo*. On the merits, Sun Life maintains that Schuyler does not

qualify for LTD benefits under either standard of review, while Schuyler argues that the medical evidence demonstrates that she is disabled under the LTD Plan.

The Court agrees with Schuyler that Sun Life committed a procedural error in its consideration of her claim. Because that error was not harmless, *de novo* review is appropriate. This action is thus remanded to Sun Life for reconsideration of the full record, including the new evidence relating to Schuyler's ability to work and her favorable Social Security Disability benefits determination.[3]

## I. Sun Life Committed a Procedural Violation, Forfeiting Deferential Review

There is no dispute that the LTD Plan included a grant of discretionary authority. Sun Life is thus entitled to deferential review of its denial of Schuyler's claim unless that denial was arbitrary and capricious. *Rombach*, 211 F.3d at 194. As described above, if a plan "fail[s] to comply with the Department of Labor's [("DOL")] claims-procedure regulation, 29 C.F.R. § 2560.503–1," that claim will be "reviewed *de novo* . . . unless the plan . . . can show that its failure . . . was inadvertent *and* harmless." *Halo*, 819 F.3d at 58 (emphasis in original).

The parties disagree as to whether Sun Life followed DOL claims-procedure regulations in the processing of Schuyler's claim. Schuyler argues that Sun Life violated the applicable regulations because, in resolving her LTD appeal, it failed to explain why it was not relying on the views of its own vocational expert, Andenmatten. Sun Life responds that it provided sufficient explanation in its LTD appeal denial letter, and that there was no daylight between the views of its

[3] Although a Social Security disability determination does not bind an ERISA plan administrator, the Second Circuit has recognized that such determinations are probative evidence of disability, and extra-record evidence of this kind may be considered in reviewing an ERISA benefits claim where good cause exists—as it does here, because the SSA's decision postdates the record that was before Sun Life. *See Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 441–43 (2d Cir. 2006).

two vocational experts, Andenmatten and Finnegan. It also argues that any violation of the DOL claims-procedure regulation was harmless.

The relevant portion of the DOL claims-procedure regulation, § 2560.503-1, provides:

> ***Manner and content of notification of benefit determination on review.*** The plan administrator shall provide a claimant with written or electronic notification of a plan's benefit determination on review. . . . In the case of an adverse benefit determination, the notification shall set forth, in a manner calculated to be understood by the claimant . . . [a] discussion of the decision, including an explanation of the basis for disagreeing with or not following . . . [t]he views of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination.

29 C.F.R. § 2560.503-1(j)(6)(i)(B) (emphasis in original). In simpler terms, § 2560.503-1(j)(6)(i)(B) requires a plan administrator—in this case, Sun Life—to explain why, in upholding an initial ERISA disability claim denial, it "disagree[d] with" or did "not follow[]" the views put forth by any one of its own experts.

In the initial LTD proceeding, Andenmatten, a Sun Life vocational expert, determined that Schuyler's occupation required a "LIGHT exertion level" with "physical demand requirements . . . in excess of those for Sedentary Work," including "walking or standing to a significant degree (6 hours in an 8 hour day)." Dkt. No. 89-16 at 36; AR2300. In the subsequent occupational analysis conducted after Schuyler filed her appeal of Sun Life's original denial of benefits, however, Finnegan, another Sun Life vocational expert, concluded that the "Territory Sales Representative" role is a "Light occupation" that "requires frequent sitting, *occasional standing and walking*." AR2498 (emphasis added). In this context, "occasional standing and walking" is defined as standing and walking for up to one-third of the workday—approximately two-and-one-half hours per day. *Id*.

Andenmatten and Finnegan therefore reached conflicting conclusions about the vocational requirements of the Territory Sales Representative role. Although Finnegan's report purports to adopt the same "Light occupation" framing as Andenmatten's, the standing and walking requirement described in the Finnegan report corresponds instead with the Department of Labor's lesser standard for "sedentary work," namely, that "walking and standing are required occasionally." 20 C.F.R. § 416.967(a)–(b). This regulation further defines "light work" as requiring "a good deal of walking or standing," *id.* § 416.967(b), a definition that is consistent with the description of the role included in Andemnatten's report. Finnegan's report, by contrast, provided that the "Territory Sales Representative" role, although a "Light occupation," requires only "occasional standing and walking," Dkt. No. 89-17 at 86; AR2498, meaning that the role necessitated standing and walking only "up to 1/3 of the time (up to 2.5 hours)." *Id*. In sum, the Andenmatten and Finnegan reports adopted different requirements for Schuyler's profession as they related to standing and walking: Andenmatten concluded the job was far more physically demanding than Finnegan did, because Andenmatten's description was consistent with the regulatory criteria for "light work," while Finnegan's description was congruous with the lesser "sedentary" classification.[4]

In the appeal decision, Sun Life relied on the Finnegan report and its less strenuous walking and standing test for the Territory Sales Representative role. It did not explain why it was departing from the reasoning of the Andenmatten report and his conclusions that the role was more physically demanding than Finnegan had opined. The appeal denial letter stated, in relevant part:

[4] At oral argument, Sun Life argued that the reports were not in disagreement because, among other things, the two experts used different definitions from different source tools, Finnegan's report was more detailed, and one expert assessed the medical evidence bearing on Schuyler's capacity while the other assessed the occupation writ large. Dkt. No. 105 (Oral Arg. Tr.) 19:11–26:12. Even if that were true, however, Finnegan and Andenmatten's reports were in conflict with one another as to the demands of Schuyler's occupation. When experts are in conflict, the ERISA regulations require plan administrators to explain why they are adopting the views of one over another. 29 C.F.R. § 2560.503-1(j)(6)(i)(B).

> We also asked a vocational consultant [Finnegan] to review [Andenmatten's] prior Occupational Analysis . . . and to comment on the impact of the identified restrictions and limitations on the demands of the identified occupation. The vocational consultant opined, in part: "Territory Sales Representative is a Light work occupation." . . . *[T]he prior Occupational Analysis concluded that Ms. Schuyler's job requires walking and standing to a significant degree or 6 hours in an 8-hour day. However, [Andenmatten's] Occupational Analysis determined that Ms. Schuyler's occupation exists within a Light exertion level*, . . . as defined by the US Department of Labor. In [Finnegan's] Occupational Analysis Addendum . . . [Finnegan] explained that while Ms. Schuyler's occupation of a Territory Sales Representative is compatible with exertional and physical demand capacity of a Light occupation, *it actually requires frequent, sitting, occasional standing and walking*. She explained that this is due to the nature of the occupational duties, which allow for flexibility and positional changes as necessary.

Dkt. No. 89-16 at 128 (Appeal Decision at 12) (emphasis added).

In this passage, Sun Life appears to acknowledge that the two occupational analyses reached different conclusions as to the role's standing and walking requirements, but nowhere explains *why* Sun Life credited Finnegan's assessment over Andenmatten's. Merely reciting a disagreement, or even the reasons proffered by one vocational consultant for disagreeing with the other, is not "explanation" as to why Sun Life itself "disagree[d] with or [did] not follow[] the views" of a "vocational expert[] whose advice was obtained on behalf of the plan in connection with [Schuyler's] adverse benefit determination." 29 C.F.R. § 2560.503-1(j)(6)(i)(B). By discounting the Andenmatten report and relying upon Finnegan's without explanation, Sun Life thus violated the regulation.[5]

This error was not harmless as it may well have had a substantial impact on the viability of Schuyler's "Regular Occupation" disability claim. As Sun Life's own medical consultant, Dr. Boudreau, found, Schuyler could stand or walk for no more than thirty minutes at a time and for

[5] Several weeks after oral argument, without seeking leave to do so, Sun Life submitted a letter restating its view that its handling of the Andenmatten report did not violate the relevant DOL claims-procedure regulation. Dkt. No. 103 (Def. Jul. 14, 2026 Ltr.). Sun Life's letter does not provide any new basis for finding that it adhered to 29 C.F.R. § 2560.503-1(j)(6)(i)(B).

no more than four hours total in an eight-hour day. Pl. 56.1 Statement ¶ 210; AR2113. Accepting Dr. Boudreau's findings, under the benchmark set forth by Andenmatten in Sun Life's own initial review of Schuyler's LTD application, Schuyler could not perform the requirements of her Regular Occupation and thus could have qualified for benefits. Finnegan's reclassification of that same occupation on appeal as requiring only "occasional" standing and walking cut those demands by more than half, meaning that Schuyler, under the Finnegan classification, would be able to perform the requirements of her Regular Occupation. This shift, therefore, may have been outcome determinative. And because the revised definition surfaced for the first time in the appeal denial, without Sun Life explaining why it had abandoned Andenmatten's assessment, Schuyler had no opportunity to respond to Sun Life's adoption of that definition over its previous one. Thus, given that Sun Life altered the dispositive vocational premise without notice or explanation, it cannot show that the deviation was "inadvertent and harmless," and it accordingly forfeited deferential review. *See Halo*, 819 F.3d at 60–61.[6]

## II. Summary Judgment Is Not Warranted and the Court Remands to Sun Life

Turning to the merits, there are material disputes of fact preventing the Court from granting either party's motion for summary judgment under *de novo* review. The parties present conflicting evidence on the extent and nature of Schuyler's injuries and disability, as well as her ability to work and earn income. These issues turn on both medical evidence and Schuyler's credibility. For instance, Sun Life points to Schuyler's social-media posts from the months after her claimed

[6] Schuyler also insists that Sun Life improperly relied on a report from Bethany Drabik, a nurse employed by Sun Life, which she claims was not disclosed, thus depriving her of the requisite notice and opportunity to respond, in violation of 29 C.F.R. § 2560.503-1(h)(4)(i). There is, however, a factual dispute as to whether the Drabik report was indeed disclosed to Schuyler. Because the Court has concluded that Sun Life committed a procedural error that was not harmless in improperly adopting a new occupational analysis at the review stage, it need not resolve the issue. Upon remand, Schuyler will have the opportunity to respond to the Drabik report, mitigating any prejudice she may have suffered.

onset of disability—among them, photographs of her hiking in Rockefeller State Park Preserve in July 2019—as inconsistent with the standing and walking limitations reflected in her medical records and own statements. Def. CSOF ¶¶ 48, 51. Schuyler responds that hiking is "one of the few things [she is] still able to do" because it is quiet and can be done in shaded areas at her own pace, as she claims she continues to be impacted by excessive noise and light. Pl. CSOF ¶ 51 (quoting Schuyler Aff. ¶ 112). At summary judgment, "the judge's function is not [her]self to weigh the evidence and determine a witness's credibility," which is what deciding this issue on the papers would entail. *Thomas v. Town of Se.*, 336 F. Supp. 3d 317, 325 (S.D.N.Y. 2018) (citing *Anderson*, 477 U.S. at 249). Because the parties' motions turn on Schuyler's physical and mental limitations, and because there are material disputed facts as to the nature and scope of these limitations, both motions for summary judgment are denied.

The parties stipulated to an *O'Hara* procedure, pursuant to which the Court may resolve any issues of fact and essentially conduct a "bench trial on the papers." *O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 110, 116 (2d Cir. 2011); *see also Richard K. v. United Behavioral Health*, 2025 WL 869715, at *1 (S.D.N.Y. Mar. 20, 2025) (resolving issues of fact in an ERISA appeal on the written record, pursuant to *O'Hara*). As both parties acknowledged at oral argument, however, the Court need not conduct such a procedure and may instead remand the claim to the plan administrator for a renewed determination in view of the full record. *See LeClair v. Liberty Life Assurance Co. of Bos.*, 2013 WL 3338685, at *3 (W.D.N.Y. July 2, 2013) ("[T]he district court has the inherent authority to remand a benefit claim before deciding that claim on the merits."). Other courts have noted that when a plan administrator had not yet conducted a "full and fair review" of an administrative record, remand is appropriate. *Landry v. Metro. Life Ins. Co.*, 2021 WL 848455, at *13 (S.D.N.Y. Mar. 5, 2021) (collecting cases). "Indeed, several circuit

courts of appeals have expressly held that remand of an ERISA case to the plan administrator is appropriate . . . particularly where the plan administrator's decision suffers from a procedural defect or the administrative record is factually incomplete." *LeClair*, 2013 WL 3338685, at *3.

Because of Sun Life's procedural error, the enduring factual disputes, and the "incomplete[]" record upon which Sun Life initially denied Schuyler's claim, remand to Sun Life is the appropriate course of action. *Landry*, 2021 WL 848455, at *13. The plan administrator here has not had the opportunity to pass on much of the new evidence presented by both parties, including Schuyler's favorable Social Security Disability benefits determination and the expert reports relied upon by the SSA, or Sun Life's new evidence of her post-Benco work as a real estate agent, none of which are in the administrative record. And because there is a dispute as to whether Schuyler received the Drabik report during Sun Life's adjudication of her claim—as required by the DOL claims-procedure regulation—remand will ensure she has the opportunity to respond to it. *Cf. LeClair*, 2013 WL 3338685, at *3 (remanding because "the plan administrator has failed to comply with ERISA's appeal-notice requirements in adjudicating a participant's claim . . . 'so that a full and fair review can be accomplished'" (quoting *Gagliano v. Reliance Std. Life Ins. Co.*, 547 F.3d 230, 240 (4th Cir. 2008))).

In any event, Schuyler herself asks that the claim be remanded to Sun Life for an initial determination under the Policy's "Any Occupation" definition of Total Disability—a determination Sun Life never reached because it found that she was able to perform the duties of a Territory Sales Representative. Pl.'s Br. at 3 n.2, 25. To the extent that Schuyler prevails on that question, Sun Life will next have to consider whether she meets the "Any Occupation" disability standard. Remand is also in the interest, therefore, of judicial economy.

## CONCLUSION

For the foregoing reasons, the parties' cross-motions for summary judgment are denied. The claim is remanded to Sun Life as plan administrator for consideration of Schuyler's LTD application consistent with this Opinion and Order. Because the claim is remanded for a "full and fair review," any award of fees, costs, and interest would be premature. *Landry*, 2021 WL 848455, at *13. Either party may make such a motion at a later date, pursuant to 29 U.S.C. § 1132(g)(1).

The Clerk of Court is respectfully directed to terminate the motions pending at Docket Numbers 86 and 90, and to stay this case pending exhaustion of the administrative review process. The parties shall inform the Court in writing of the result of Sun Life's renewed review of Plaintiff's LTD benefits application.

Dated: September 18, 2026
New York, New York

Ronnie Abrams
United States District Judge